# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELEANOR PENA,

      Plaintiff,

vs.                                                    Civ. No. 01-491 WJ /WWD

JO ANNE B. BARNHART,
**Commissioner of Social Security,**

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Motion") **[Doc. 10]**, filed December 31, 2001. Plaintiff, Eleanor Pena, alleges a disability which commenced September 1, 1996 due to an underactive thyroid, rheumatoid arthritis and a "need to have [her] eyes checked." Tr. at 98. At the time of the Administrative Law Judge's ("ALJ's") decision on March 26, 2001, Plaintiff was 53 years old. Plaintiff has completed approximately one and a half years of college and has worked as a convenience store clerk, a cashier and a waitress.

    2. On February 14, 1997, Plaintiff applied for a Period of Disability and Disability Insurance Benefits ("DIB"). Plaintiff also applied for Supplemental Security Income benefits ("SSI") with a protective filing date of January 27, 1997. The Commissioner's ALJ conducted a hearing on December 8, 1997 and issued a decision on June 10, 1998, denying both of Plaintiff's applications. Tr. at 18. This decision was ultimately remanded for further action in accordance with the District Judge's order filed on May 4, 2000. Tr. at 287. Following a supplemental

hearing on November 30, 2000, the ALJ issued a decision on March 26, 2001 that was partially favorable to Plaintiff. Tr. at 247.

3. In that decision, the ALJ concluded that Plaintiff "has been under a disability for [SSI] purposes since her September 12, 2000 later established onset date." Tr. at 254. However, the ALJ determined that prior to this date, Ms. Pena was able to "perform her past relevant light work" and thus, is not entitled to a period of disability and DIB due to a lack of disability insured status.[1] Id. Plaintiff now seeks review of that decision pursuant to 42 U.S.C. §405(g).

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred when he failed to consult with a medical advisor before determining the onset date of disability, and (2) the ALJ erred when he failed to include all of Ms. Pena's limitations in his hypothetical questions.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing

---

[1] Plaintiff's "date last insured" is December 31, 1998. Tr. at 253.

disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

7. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson, 987 F.2d at 1487 (citations omitted).

8. Plaintiff alleges that she is unable to work because she has "a lot of problems using my hand especially my right . . . and with walking and sitting for any definite length of time." Tr. at 264. Plaintiff also testified that she has "a lot of pain . . . [that] makes it hard" for her to do anything. Id. During the hearing conducted on December 8, 1997, Plaintiff testified that when she "tr[ies] to hold things . . . it's like the bones, like the joints just lock up and they won't open up." Tr. at 42. The ALJ found that "[t]he medical evidence establishes that the claimant has the following severe impairments: osteoarthritis, fibromyalgia, chronic back pain, and obesity." Tr. at 253.

*First Alleged Error*

9. Plaintiff contends that because there is a question of when Ms. Pena's condition deteriorated to the point of disability, the ALJ erred when he failed to consult a medical advisor before determining the onset date of Plaintiff's disability. The ALJ determined Plaintiff's disability

3

onset date to be September 12, 2000.

10. Social Security Ruling ("SSR") 83-20 defines the onset date as "the first day an individual is disabled as defined in the Act and the regulations." Reid v. Chater, 71 F.3d 372, 373 (10th Cir. 1995). "Factors relevant to the determination are the claimant's allegation of an onset date, his work history, and the medical evidence, with medical evidence being the primary element in determining onset date." Id.

11. SSR 83-20 "recognizes that it sometimes may be necessary to infer the onset date. The ALJ then should call on the services of a medical advisor at the hearing." Id. at 374. "[A] medical advisor need be called only if the medical evidence of onset is ambiguous." Id. (citations omitted). However, "with slowly progressive impairments, such as [osteoarthritis[2]], it is sometimes impossible to obtain medical evidence establishing the precise date the impairment became disabling. Ott v. Chater, 899 F.Supp. at 552. Therefore, because the judgment as to how long a disabling impairment has existed must have a legitimate medical basis, "the ALJ should call on the services of medical advisor when onset must be inferred." Id.

12. Plaintiff alleges that she has been disabled since September 1, 1996, and the ALJ found that Plaintiff has not been engaged in substantial gainful activity since September 1, 1996. Therefore, the first two criteria point to an onset date prior to December 31, 1998. See Ott v. Chater, 899 F.Supp. 550, 555 (D. Kan. 1995). The third and primary factor that must be considered is the medical evidence. The ALJ apparently did not find the medical evidence ambiguous, nor did he find it necessary to infer the onset of disability.

---

[2] Osteoarthritis is defined as a "degenerative" joint disease. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 941 (26th ed.).

4

13. The ALJ cited the functional capacities evaluation ("FCE") by Robert E. Pennington, M.D.[3] as evidentiary support for his finding that Ms. Pena was unable to perform the full range of sedentary work after September 12, 2001. Tr. at 249. The FCE indicated that Ms. Pena's abilities were limited with respect to lifting and carrying, standing or walking, sitting, reaching overhead, handling objects, fine manipulation and traveling. Tr. at 249, 322-23. The ALJ incorporated many of these limitations into the second hypothetical that he posed to the vocational expert during the hearing. Tr. at 250.

14. Dr. Pennington's report indicates that Plaintiff's condition may have progressively deteriorated. Tr. at 318 (stating that Ms. Pena "describes . . . the beginnings of lower back pain, which appeared to progress to other areas of the body"). Moreover, other medical evidence demonstrates the possibility of a disability onset date prior to September 12, 2001. For example, on June 12, 1998 Drs. Wilmer Sibbitt and Lisa June indicated that Ms. Pena's diagnoses included fibromyalgia and osteoarthritis. Tr. at 232-33. Drs. Sibbitt and June also noted that Ms. Pena's extremities "show synovial[4] thickening over the second and third metacarpophalangeal[5] joints bilaterally" and that she has "flexor tenosynovitis.[6]" Tr. at 232.

---

[3] The FCE was signed by Karen Balkman, M.D. Tr. at 323.

[4] Synovia is a fluid secreted by a membrane and contained in "joint cavities, bursae, and tendon sheaths." DORLAND'S supra note 2, at 1301.

[5] Metacarpophalangeal pertains to the metacarpus and phalanges. DORLAND'S supra note 2, at 803. Metacarpus is the part of the hand between the wrist and the fingers, id., and phalanges refers to the bones of the fingers or toes, id. at 999.

[6] A flexor is a "muscle that flexes a joint." DORLAND'S supra note 2, at 510. Tenosynovitis is "inflammation of a tendon sheath." Id. at 1316.

5

15. On May 12, 1997, Leonore A. Herrera, M.D. observed that Ms. Pena's fingers were edematous[7] and noted "weakness of apposition" when Ms. Pena gasped objects with her hands. Tr. at 200. Specifically, Dr. Herrera observed that although Ms. Pena "was able to hold on to a pencil, [she] had marked stiffness of the digits when asked to remove the pencil," and that Ms. Pena "could not remove small papers" from her purse. Id. Dr. Herrera opined that this "may limit [Ms. Pena's] ability to do fine manipulative work." Id. Dr. Herrera further stated that, due to her "weakness of grasp and apposition, [Ms. Pena] may have trouble doing heavy weighted lifting." Id. Finally, Dr. Herrera determined that "[s]tanding, walking, and sitting are limited primarily by pain during acute periods of joint inflammation" and that Ms. Pena is "limited in exertional activities because of her obesity and marked lower extremity obesity." Id.

16. Defendant points out that the ALJ found Plaintiff's "statements of symptoms and functional limitations not to be entirely credible" before September 12, 2001. Tr. at 252. The ALJ's credibility finding was based on Ms. Pena's inconsistent statements regarding problems with her legs and shoulder. Id. However, there is no indication that Plaintiff made any inconsistent statements regarding the ability to use her hands. Moreover, while Dr. Herrera opined that Ms. Pena's limitations with respect to standing, walking and sitting arose primarily from pain, Dr. Herrera does not similarly indicate that Ms. Pena's difficulties with her hands were due to pain. Thus, the ALJ's finding of noncredibility does not substantially affect Plaintiff's testimony or the medical evidence with respect to her manual dexterity.

---

[7] Edema refers to "the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body." DORLAND'S supra note 2, at 421.

17. After reviewing the medical records, I find that the evidence is not definite with respect to the date of onset of Plaintiff's disability, necessitating the assistance of a medical advisor. Consequently, because the ALJ did not consult a medical advisor before determining Plaintiff's disability onset date, this matter must be remanded.

*Second Alleged Error*

18. Plaintiff alleges that the ALJ erred when he posed a hypothetical to the vocational expert ("VE") that failed to include limitations concerning fine manipulation and obesity. Defendant contends that these limitations were properly excluded from the hypothetical because they were not supported by the evidence.

19. The ALJ found that Plaintiff was capable of performing "her past relevant light work" prior to September 12, 2000. Tr. at 254. This finding was based on the VE's response to a hypothetical question that presumed an individual without any stated limitations related to manual dexterity.[8] Moreover, the ALJ specifically cautioned the VE to "respond directly to the case picture as presented [in the hypotheticals] and not to allow any extraneus [sic] matter [to] influence you."[9] Tr. at 277.

---

[8] The hypothetical included the following limitations: (1) no ability to climb ladders, ropes or scaffolds, and (2) the ability to occasionally climb, balance, stoop, kneel, crouch, and crawl. Thus, although the hypothetical did not expressly include "obesity" as a limitation, it incorporated limitations that are imposed by obesity as supported by the medical evidence. See, e.g., Williams v. Apfel, No. Civ. 00-8-ST, available at, 2000 WL 1658369, at *13 (D.Or. Sep. 28, 2000) (noting that the ALJ "considered the physical limitations imposed by [the claimant's] obesity and directed his analysis at the effects of her obesity, as indicated by the medical evidence").

[9] For this reason, Defendant's argument that the VE's presence at the hearing minimized the effect of any erroneous hypothetical is without merit. See Def.'s Resp. to Pl.'s Mot. at 7.

20. Defendant contends that Plaintiff's daily activities, such as cooking and cleaning, do not support her claim that she is limited with respect to fine manipulation. See Def.'s Resp. at 9. The ALJ, however, did not explain the basis for excluding this limitation from his hypothetical. Moreover, even assuming that Plaintiff's testimony regarding her daily activities does not "support" her claim of limited fine manipulation, there is also nothing in her testimony that contradicts or conflicts with such a claim.

21. Defendant also contends that the ALJ properly relied on the reports of two non-examining agency physicians who failed to find that Plaintiff had any manipulative limitations. However, the agency physicians, Drs. N. Nickerson and Clint Morgan, did not complete the section of the form addressing manipulative limitations. Tr. at 205. Nor did the agency physicians address Dr. Herrera's opinion regarding Plaintiff's ability to do fine manipulative work. Finally, even though the agency physicians included parts of Dr. Herrera's evaluation in their report, they indicated that no other "examining source statements regarding the claimant's physical capacities [were contained] in [the] file."[10] Tr. at 208. Thus, there is no evidence that either of the agency physicians considered or assessed Plaintiff's manipulative limitations.

22. A VE's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). "Typically, inquiries to a VE must include all limitations supported by the evidence." Poor v. Chater, 76 F.3d 393 (10th Cir. Feb. 2, 1996) (unpublished table disposition), available at, 1996 WL 41833, at **3 (citing Evans

---

[10] Dr. Herrera's opinion regarding Plaintiff's ability to do fine manipulative work is contained in a section labeled "Medical Source Statement Regarding Ability to do Work Related Activities." Tr. at 200.

v. Chater, 55 F.3d 530, 532 (10th Cir.1995)).  Plaintiff's manipulative impairments are particularly important in this claim because the "loss of fine manual dexterity narrows the sedentary and light ranges of work much more than . . . [other] ranges of work."  SSR 85-15.

23.     Here, there is considerable evidence that Ms. Pena's manual dexterity was impaired to some degree before September 12, 2000.  However, the ALJ did not include any limitations with respect to manual dexterity in the hypothetical addressing that time period.  Thus, the ALJ erred when he did not include all of Plaintiff's limitations supported by the evidence in the hypothetical presented to the VE.  Accordingly, on remand the Commissioner should take into consideration some limitation of function pertaining to Plaintiff's manual dexterity before September 12, 2000.

**Recommended Disposition**

For the reasons stated above, I recommend that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. 10]** be granted and that this cause be remanded to the Commissioner for additional proceedings to include:

A.      Consultation with a medical advisor and reassessment of the date of onset of Plaintiff's disability;

B.      Clarification of Plaintiff's limitations regarding her manual dexterity before September 12, 2000; and

C.      Presentation of appropriate hypotheticals to a vocational expert, taking into consideration the clarification obtained regarding Plaintiff's limitations.

9

Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE